# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 10, 2015 Session

## STATE OF TENNESSEE v. ADRIAN R. BROWN

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for McMinn County
Nos. 95857, 95858, 95859, 95860    Carroll L. Ross, Judge**

_____

**No. E2014-00673-SC-R11-CD – Filed December 2, 2015**
_____

We granted this appeal to determine whether Tennessee Rule of Criminal Procedure 36.1 ("Rule 36.1") permits parties to seek correction of expired illegal sentences. We hold that Rule 36.1 does not expand the scope of relief available for illegal sentence claims and therefore does not authorize the correction of expired illegal sentences. We also conclude that a Rule 36.1 motion alleging that a trial court failed to award pretrial jail credit is insufficient to state a colorable claim for relief from an illegal sentence. Applying these holdings, we affirm the judgment of the Court of Criminal Appeals upholding the trial court's dismissal of the defendant's Rule 36.1 motion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and JEFFREY S. BIVINS and HOLLY KIRBY, JJ., joined.

Mark A. Fulks and R. Andrew Hutchinson, Johnson City, Tennessee, for the appellant, Adrian R. Brown.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Rachel E. Willis, Senior Counsel; Stephen Crump, District Attorney General; and Krista Oswalt, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual Background

On November 7, 2013, Adrian Brown filed pro se a motion under Rule 36.1, seeking correction of the allegedly illegal sentences the Criminal Court for McMinn County imposed after he pleaded guilty, on November 6, 1995, to three counts of selling less than .5 grams of cocaine, a Class C felony,[1] and to one count of selling more than .5 grams of cocaine, a Class B felony.[2] Mr. Brown attached several exhibits to his motion, including a transcript of his plea submission hearing and copies of the judgments reflecting the sentences he challenged as illegal.[3] Mr. Brown argued that his sentences are illegal because: (1) the trial court failed to award him pretrial jail credit, as mandated by Tennessee Code Annotated section 40-23-101(c) (2012);[4] (2) the trial court imposed six-year sentences on his Class C felony convictions when his plea agreement called for three-year sentences; and (3) the trial court imposed sentences above the presumptive statutory minimum for his offense (Class C felony) and offender (Range I) classifications without finding enhancement factors.

The transcript of Mr. Brown's plea submission hearing reflects that the assistant district attorney and defense counsel announced they had reached an agreement by which Mr. Brown would plead guilty to the indicted offenses, with a recommended three-year concurrent sentence for each Class C felony and a recommended eight-year concurrent

---

[1] Tenn. Code Ann. § 39-17-417(a)(3), (c)(2)(A) (Supp. 1994).

[2] Tenn. Code Ann. § 39-17-417(a)(3), (c)(1) (Supp. 1994).

[3] Mr. Brown attached other exhibits to his motion, including: (1) a copy of an October 5, 1995 capias instanter directing the Sheriff of McMinn County to take him into custody to answer the State's indictment for four counts of the sale of crack cocaine; (2) a copy of a page bearing the title "Register of Prisoners," which reflects that Mr. Brown entered the McMinn County jail on October 11, 1995; (3) a January 2, 1996 post-sentence investigation report; (4) a Community Corrections Progress/Termination Report, which reflects that Mr. Brown entered the program on January 12, 1996, remained in the program for 365 days, "completed both in-patient & out-patient treatment for alcohol/drugs," was "very cooperative" and showed "initiative," and received a recommendation of transfer to probation for the remainder of his sentence; (5) an October 21, 2003 probation violation affidavit and warrant, which alleges that Mr. Brown had been arrested on August 31, 2003, for possession of cocaine, marijuana, and drug paraphernalia; (6) a June 10, 2005 order of the trial court dismissing, by agreement of the parties, the probation revocation warrant because Mr. Brown had received a life sentence in the United States District Court for the Eastern District of Tennessee; and (7) a June 10, 2005 order taxing costs of the probation revocation petition to the State of Tennessee.

[4] The current statutory language is identical to that in effect at the time Mr. Brown was sentenced; therefore, the citations in this opinion are to the current version of the statute.

sentence, with a referral to Community Corrections for service of the sentence, for the Class B felony. <u>See</u> Tenn. R. Crim. P. 11(c)(1)(C).[5] At the conclusion of the plea colloquy, the trial court "accept[ed] the pleas" and "adopt[ed] the agreements" as announced. <u>See</u> Tenn. R. Crim. P. 11(c)(3)(A), (c)(4).[6] However, despite the trial court's statements indicating his acceptance of the agreement, the judgments the trial court signed on November 9, 1995, listed Mr. Brown's sentence on each Class C felony as six years instead of the agreed upon three years.[7]

On January 21, 2014, about two months after he filed his Rule 36.1 motion, Mr. Brown moved to compel the trial court to hold a hearing on it. The trial court did not act upon the motion to compel, and on March 11, 2014, Mr. Brown filed a second Rule 36.1 motion and attached several of the same exhibits he had attached to his initial motion, including the transcript of his plea submission hearing and copies of the judgments.[8] Mr.

---

[5] This portion of Rule 11 provides:

> (c)(1) The district attorney general and the defendant's attorney or the defendant when acting pro se, may discuss and reach a plea agreement. The court shall not participate in these discussions. If the defendant pleads guilty or nolo contendere to a charged offense or a lesser or related offense, the plea agreement may specify that the district attorney general will: . . . (C) agree that a specific sentence is the appropriate disposition of the case.

Tenn. R. Crim. P. 11(c)(1)(C). In the version of Rule 11 in effect when Mr. Brown pleaded guilty in 1995, the foregoing text, with slight stylistic differences, appeared in subsection (e)(1)(c).

[6] These portions of Rule 11 provide:

> If the agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept or reject the agreement pursuant to Rule 11(c)(4) or (5), or may defer its decision until it has had an opportunity to consider the presentence report.
>
> . . . .
>
> If the court accepts the plea agreement, the court shall advise the defendant that it will embody in the judgment and sentence the disposition provided in the plea agreement.

Tenn. R. Crim. P. 11(c)(3)(A), (c)(4). In the version of Rule 11 in effect when Mr. Brown pleaded guilty in 1995, the foregoing text, with slight stylistic differences, appeared in subsections (e)(2) and (e)(3).

[7] The copies of the judgments attached to Mr. Brown's Rule 36.1 motions bear a faint and partial file stamp that appears to show that the judgments were filed in December 1995, several weeks after the defendant pleaded guilty. On each judgment, the original sentence term is crossed out and the number six is written in the space for the sentence length.

[8] The copy of the "Register of Prisoners" page Mr. Brown attached as an exhibit to his second Rule 36.1 motion showed both the date of his entry into the McMinn County jail, October 11, 1995, and

- 3 -

Brown reiterated the arguments he had initially made regarding the illegality of his sentences.

On March 25, 2014, the State filed a response, arguing that Mr. Brown's Rule 36.1 motions should be dismissed because Mr. Brown's sentences had expired. The trial court dismissed Mr. Brown's motions on March 26, 2014, without explanation, stating only that the motions were without merit.

Mr. Brown appealed, arguing that: (1) his sentences are contrary to statute because he was not awarded pretrial jail credit; (2) his six-year sentences fall outside the statutory range because the trial court's failure to award pretrial jail credits resulted in a de facto sentence above the six-year statutory maximum for a Range I offender convicted of a Class C felony; (3) his sentences are illegal because the trial court violated Rule 11(c) of the Tennessee Rules of Criminal Procedure when it failed to give him an opportunity to withdraw his pleas before sentencing him to six years on each Class C felony offense instead of the agreed upon three-year concurrent sentence; and (4) the six-year sentences the trial court imposed are void because the trial court failed to find enhancement factors on the record to justify increasing his sentences above the presumptive statutory minimum. State v. Brown, No. E2014-00673-CCA-R3-CD, 2014 WL 5483011, at *2 (Tenn. Crim. App. Oct. 29, 2014). Mr. Brown also asserted that the allegations of his Rule 36.1 motion are sufficient to state a colorable claim and that the trial court erred by refusing to appoint counsel and hold a hearing. Id.

In the Court of Criminal Appeals, the State changed its position and conceded that Mr. Brown's allegation that the trial court failed to award pretrial jail credits states a colorable claim for relief under Rule 36.1. The State recommended remanding the case to the trial court for appointment of counsel and a hearing under Rule 36.1. Id.

The Court of Criminal Appeals declined to accept the State's concession and held instead that the expiration of Mr. Brown's sentences had rendered his Rule 36.1 motion moot. Id. at *6. The Court of Criminal Appeals also noted that Mr. Brown's allegations, other than his claim involving the trial court's failure to award pretrial jail credits, were insufficient to state a colorable claim for relief from an illegal sentence under Rule 36.1. Id. at *6 n.6. The Court of Criminal Appeals, therefore, affirmed the trial court's dismissal of Mr. Brown's Rule 36.1 motions.

---

the date of his discharge, February 14, 1996. According to handwritten notes on this document, Mr. Brown was released as a result of a January 12, 1996 order of the criminal court. Mr. Brown did not attach the post-sentence investigation report or the Community Corrections Progress/Termination Report as exhibits to his second motion. Instead, he attached copies of two unpublished Court of Criminal Appeals' decisions.

Mr. Brown filed pro se in this Court an application for permission to appeal. See Tenn. R. App. P. 11. We granted the application and appointed counsel to represent him before this Court.[9] State v. Brown, No. E2014-00673-SC-R11-CD (Tenn. May 15, 2015) (order granting the pro se application, appointing counsel, and providing instructions for the scheduling of oral arguments).

## II. Standard of Review

The primary issue in this appeal is whether Rule 36.1 expands the scope of relief available on illegal sentence claims from that available in habeas corpus proceedings by permitting the correction of *expired* illegal sentences. This appeal also presents the question of whether an allegation that the trial court failed to award pretrial jail credits is sufficient to state a colorable claim for relief from an illegal sentence under Rule 36.1. These issues are questions of law concerning the scope of relief and the proper interpretation of Rule 36.1. State v. Johnson, 342 S.W.3d 468, 471 (Tenn. 2011). Therefore, we review the lower courts' constructions of Rule 36.1 de novo without a presumption of correctness. Id. (citing State v. Ferrante, 269 S.W.3d 908, 911 (Tenn. 2008)). In construing rules of procedure, such as Rule 36.1, we apply generally the same rules of construction that are used to construe statutes. Id. (citing State v. Crowe, 168 S.W.3d 731, 744 (Tenn. 2005)). As is true of statutory construction, our primary objective is to effectuate the intent of the rule "without broadening or restricting the intended scope of the rule." Fair v. Cochran, 418 S.W.3d 542, 544 (Tenn. 2013) (citing Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). When the text is clear and unambiguous, we need not look beyond the plain language to ascertain the meaning of the rule. Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 527 (Tenn. 2010) (citing Green v. Green, 293 S.W.3d 493, 507 (Tenn. 2009)). We do not base our interpretation of a procedural rule on a single sentence, phrase, or word of text, however, but instead endeavor to give effect to every clause, phrase, or word used. Id. (citing Cohen v. Cohen, 937 S.W.2d 923, 828 (Tenn. 1996)). We presume that every word was used deliberately, that each word has a specific meaning and purpose, and that the intent was not to enact a useless or absurd procedural rule. Id. (citing Fletcher v. State, 951 S.W.2d 378, 382 (Tenn. 1997)). We also interpret a procedural rule in light of the law existing at the time the procedural rule was adopted. Id. (citing Murfreesboro Med. Clinic, P.A. v. Udom, 166 S.W.3d 674, 683 (Tenn. 2005)). Additionally, when construing procedural rules, we may consider matters beyond the text that are relevant to the rule's construction, such as public policy, historical facts preceding or contemporaneous with the enactment of the procedural rule, and the background and purpose of the procedural rule, although these

---

[9] The Court is grateful to attorneys Mark Fulks and R. Andrew Hutchinson of the law firm of Baker, Donelson, Bearman, Caldwell, & Berkowitz for providing Mr. Brown with outstanding representation in the proceeding before this Court.

sources cannot provide a basis for departing from the unambiguous text of the rule. Id. at 527-28. A review of the development of Tennessee law regarding the correction of illegal sentences is helpful to a proper understanding of Rule 36.1.

## III. Analysis

### A. Correcting Illegal Sentences

In Tennessee, a trial court's judgment becomes final thirty days after entry, unless a specified post-trial motion is filed, in which case the judgment becomes final upon "entry of the order denying a new trial or granting or denying any other such motion or petition." Tenn. R. App. P. 4(c); State v. Green, 106 S.W.3d 646, 648-49 (Tenn. 2003); State v. Peele, 58 S.W.3d 701, 704 (Tenn. 2001); State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996). The general rule is that a trial court has no power to alter a final judgment. Green, 106 S.W.3d at 648–49; Peele, 58 S.W.3d at 704; Pendergrass, 937 S.W.2d at 837 (citing State v. Moore, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991)). In 1978, this Court recognized an exception to this general rule and held that "a trial judge may correct an illegal, as opposed to a merely erroneous, sentence at any time, even if it has become final." State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978).

Nevertheless, when we announced this exception in Burkhart, we did not simultaneously establish a procedure for requesting correction of an allegedly illegal sentence. Moreover, the Tennessee Rules of Criminal Procedure, which became effective in 1979, only one year after Burkhart, also failed to specify any procedure for making such requests. Cantrell v. Easterling, 346 S.W.3d 445, 453 (Tenn. 2011). In the absence of any explicit procedure, defendants challenging illegal sentences used the procedural mechanism that the defendant in Burkhart had used—a motion to the sentencing court requesting correction of an illegal sentence. See Moody v. State, 160 S.W.3d 512, 515 (Tenn. 2005) (citing Cox v. State, 53 S.W.3d 287, 291 (Tenn. Crim. App. 2001)). One disadvantage of this procedure, however, was that the Tennessee Rules of Appellate Procedure, which also became effective in 1979,[10] did not authorize an appeal as of right from a trial court's decision on a motion to correct an illegal sentence. Moody, 160 S.W.3d at 516. Thus, like the defendant in Burkhart, parties relied upon the discretionary common law writ of certiorari to seek appellate review of trial court orders denying motions to correct illegal sentences. Id. at 515.

In 2005, this Court confronted the question of the proper procedural vehicle for raising and appealing challenges to illegal sentences. After the trial court dismissed Mr. Moody's motion to correct his illegal sentence, he sought to appeal by filing a petition for writ of certiorari with the Court of Criminal Appeals, but the intermediate appellate court

---

[10] Tenn. R. App. P. 49 (stating that the rules "shall take effect on July 1, 1979").

declined to issue the discretionary writ.  Id. at 514.  This Court granted review and began its analysis by reaffirming the rule announced in Burkhart—that an allegedly illegal sentence may be challenged at any time, even after it is final.  Id. at 516.  The Moody Court rejected the Burkhart *procedure*, however, and clarified that "the proper procedure for challenging an illegal sentence at the trial level is through a petition for writ of habeas corpus, the grant or denial of which can then be appealed under the Rules of Appellate Procedure."  Id.

By adopting habeas corpus as the mechanism for challenging illegal sentences, the Moody Court implicitly limited the scope of relief for illegal sentence claims to *unexpired* illegal sentences.  Although habeas corpus is guaranteed by article I, section 15 of the Tennessee Constitution, the procedure for seeking habeas corpus relief is regulated by statute and has been for nearly one hundred and fifty years.  May v. Carlton, 245 S.W.3d 340, 344 (Tenn. 2008) (citing Code of Tennessee §§ 3720 to 3765 (Return J. Meigs & William F. Cooper eds., E.G. Easterman & Co. 1858); Faulkner v. State, 226 S.W.3d 358, 361 (Tenn. 2007)).  One of these statutes provides that habeas corpus *relief* is available only to persons who are "imprisoned or restrained of liberty."  Tenn. Code Ann. § 29-21-101(a) (2012).  Only one year before Moody, this Court had, in two separate decisions, interpreted this statute to mean that habeas corpus relief may not be granted after expiration of a sentence.  See Benson v. State, 153 S.W.3d 27, 32 (Tenn. 2004); Hickman v. State, 153 S.W.3d 16, 24 (Tenn. 2004).

The petitioner in Hickman had been convicted in 1986 of possession of marijuana and had received a ten-day suspended sentence.  153 S.W.3d at 18-19.  Almost sixteen years later, long after his sentence had expired, he sought habeas corpus relief.  The trial court dismissed his habeas corpus petition.  Id.  The Hickman Court affirmed, and in so doing, emphasized that, although no statute of limitations applies to habeas corpus petitions, meaning that such petitions may be filed at any time, habeas corpus *relief* is available only to petitioners who are "'imprisoned or restrained of liberty.'"  Id. at 22 (quoting Tenn. Code Ann. § 29-21-101(a)).  The Court acknowledged that "restrained of liberty" had been interpreted to include limitations upon freedom of action short of imprisonment, including such restraints as conditions of parole or probation, or an order requiring a person to remain in one city.  Id.  Nevertheless, the Hickman Court held that

> [A] person is not "restrained of liberty" for purposes of the habeas corpus statute unless the challenged judgment itself imposes a restraint upon the petitioner's freedom of action or movement.  Use of the challenged judgment to enhance the sentence imposed on a separate conviction is not a restraint of liberty sufficient to permit a habeas corpus challenge to the original conviction long after the sentence on the original conviction has expired.

Id. at 23. Use of Mr. Hickman's 1986 conviction to enhance the sentence he received on a subsequent conviction, the Court explained, was "merely a collateral consequence" of his conviction and not a sufficient restraint of liberty to entitle him to habeas corpus relief. Id. at 24.

In Benson, the Court again affirmed the lower courts' denial of habeas corpus relief, explaining that "[t]he sentences complained of were served and expired before the petitioner filed a habeas corpus petition to challenge them" and, therefore, he was not "'imprisoned or restrained of liberty' by any of the challenged convictions." 153 S.W.3d at 32 (quoting Tenn. Code Ann. § 29-21-101(a) (2000)).

Two years later, the Court applied the holdings of Hickman and Benson to an illegal sentence claim. See Summers v. State, 212 S.W.3d 251, 257-58 (Tenn. 2007). In Summers, the State argued that any illegality in the petitioner's sentence was moot because the petitioner was not "'imprisoned or restrained of liberty.'" Id. at 257 (quoting Tenn. Code Ann. § 29-21-101 (2000)). The Summers Court acknowledged that the State's argument would be correct "if all of the sentences imposed for the challenged convictions were served and expired before Summers filed his habeas corpus petition." Id. (citing Benson, 153 S.W. 3d at 32). The Court pointed out, however, that Mr. Summers' forty-year sentence had not been served and had not expired; therefore, the Summers Court "decline[d] to view any illegality in the escape sentence as moot." Id. at 258.

Three years after Summers, this Court described and defined the types of sentences that are "illegal" for purposes of obtaining habeas corpus relief. We enumerated the following four non-exclusive categories of illegal sentences:

> (1) a sentence imposed pursuant to an inapplicable statutory scheme; (2) a sentence designating a [release eligibility date] where a [release eligibility date] is specifically prohibited by statute; (3) a sentence ordered to be served concurrently where statutorily required to be served consecutively; and (4) a sentence not authorized for the offense by any statute[.]

Davis v. State, 313 S.W.3d 751, 759 (Tenn. 2010) (citations omitted). The following year, we returned to the topic of illegal sentences and provided a more comprehensive analysis of sentencing errors and a more general definition of illegal sentences. Cantrell, 346 S.W.3d at 448-55. We recognized that errors in sentencing are inevitable, but "[t]he avenue of relief and remedy" is determined by the type of error that "infects" the sentence. Id. at 448-49. We explained that sentencing errors fall into three general categories—clerical errors, appealable errors, and fatal errors. Id. at 449-52. Only fatal errors render sentences illegal. Id. at 452. Clerical errors "arise simply from a clerical mistake in filling out the uniform judgment document" and may be corrected at any time under Tennessee Rule of Criminal Procedure 36. Id. at 449. Appealable errors include

"those errors for which the Sentencing Act specifically provides a right of direct appeal." Id. Included in this category is any claim that is "akin to a challenge to the sufficiency of the evidence supporting a conviction[,]" such as a claim that the record does not support the trial court's factual findings regarding sentencing. Id. at 451. Claims of appealable error generally involve attacks on the correctness of the methodology the trial court used to impose sentence. Id. at 450-51; see also State v. Deal, No. E2013-02623-CCA-R3-CD, 2014 WL 2802910 (Tenn. Crim. App. June 17, 2014). The final category—fatal errors—include only errors that are "so profound as to render the sentence illegal and void." Cantrell, 346 S.W.3d at 452. We defined an illegal sentence as "one which is 'in direct contravention of the express provisions of [an applicable statute], and consequently [is] a nullity.'" Id. (quoting Burkhart, 566 S.W.2d at 873). We included within this definition sentences which are "not authorized under the applicable statutory scheme." Id. (citing Davis, 313 S.W.3d at 759); see also id. at 454 (describing illegal sentences as "those that are simply unavailable under the Sentencing Act").

It is important to note, however, that even after this Court had identified habeas corpus as the procedure for defendants to use when challenging illegal sentences and had defined illegal sentences, the State still had no mechanism for seeking to correct illegal sentences. See id. at 457; see also Burkhart, 566 S.W.2d at 873 (recognizing that the Tennessee Department of Correction "may not alter the judgment of a court, even if that judgment is illegal"). Although Rule 36 of the Tennessee Rules of Criminal Procedure ("Rule 36") provides a method for correcting clerical mistakes in judgments, orders, or the record, it does not provide the State with a mechanism for correcting illegal sentences. See Wilkerson v. Carlton, No. E2007-02453-CCA-R3-HC, 2008 WL 4949227, at *5 (Tenn. Crim. App. Nov. 20, 2008) (quoting State v. Thomas, No. 03C01-9504-CR-00109, 1995 WL 676396, at *1 (Tenn. Crim. App. Nov. 15, 1995)) (cited with approval in Cantrell, 346 S.W.3d at 449; see also Lee v. State, No. W2013-01088-CCA-R3-CO, 2014 WL 902450, at *3 (Tenn. Crim. App. Mar. 7, 2014)).

### B. Tennessee Rule of Criminal Procedure 36.1

Against this jurisprudential backdrop, Rule 36.1 was adopted, effective July 1, 2013, with its express purpose "to provide a mechanism for the defendant or the State to seek to correct an illegal sentence." Tenn. R. Crim. P. 36.1 advisory comm'n cmt. At the same time, Rule 3 of the Tennessee Rules of Appellate Procedure was "amended to provide for an appeal as of right from [a] trial court's ruling on a motion filed under Rule 36.1 to correct an illegal sentence." Id.

As relevant to this appeal, Rule 36.1 provides as follows:

(a) Either *the defendant or the state may, at any time, seek the correction of an illegal sentence by filing a motion to correct an illegal sentence in the trial court in which the judgment of conviction was*

*entered.* For purposes of this rule, an illegal sentence is one that is not authorized by the applicable statutes or that directly contravenes an applicable statute.

(b) Notice of any motion filed pursuant to this rule shall be promptly provided to the adverse party. If the motion states a colorable claim that the sentence is illegal, and if the defendant is indigent and is not already represented by counsel, the trial court shall appoint counsel to represent the defendant. The adverse party shall have thirty days within which to file a written response to the motion, after which the court shall hold a hearing on the motion, unless all parties waive the hearing.

(c)(1) If the court determines that the sentence is not an illegal sentence, the court shall file an order denying the motion.

. . . .

(d) Upon the filing of an amended uniform judgment document or order otherwise disposing of a motion filed pursuant to this rule, the defendant or the state may initiate an appeal as of right pursuant to Rule 3, Tennessee Rules of Appellate Procedure.

Tenn. R. Crim. P. 36.1(a), (b), (c)(1), (d) (emphasis added).

The procedure prescribed in Rule 36.1 differs in at least two ways from the procedure applicable to habeas corpus petitions challenging illegal sentences. First, Rule 36.1 fills the gap Burkhart, Moody, and Cantrell left unfilled by authorizing *the State* to seek correction of illegal sentences. Second, unlike a habeas corpus petition, which generally must be filed in a court in the county where the petitioner is incarcerated,[11] a motion under Rule 36.1 must be filed "in the trial court in which the judgment of conviction was entered." Tenn. R. Crim. P. 36.1(a). Despite these differences, Rule 36.1 is identical to habeas corpus in other respects. For example, in a separate opinion also filed today, we held that the definition of "illegal sentence" in Rule 36.1 is coextensive with, and actually mirrors, the definition this Court has applied to that term in the habeas corpus context. State v. Wooden, ___ S.W.3d. ___, No. E2014,01069-SC-R11-CD (Tenn. 2015); compare Tenn. R. Crim. P. 36.1(a), with Cantrell, 346 S.W.3d at 452.

---

[11] See Tenn. Code Ann. § 29-21-105 (2012) (stating that a habeas corpus petition should be filed with "the court or judge most convenient in point of distance to the applicant, unless a sufficient reason be given in the petition for not applying to such court or judge"); Carter v. Bell, 279 S.W.3d 560, 562 (Tenn. 2009) (discussing section 29-21-105).

Although these differences and similarities are not dispositive of this appeal, they are relevant to our consideration of the question that must be answered here—whether Rule 36.1 expands the scope of relief available in habeas corpus by permitting either the defendant or the State to correct *expired* illegal sentences. Mr. Brown argues that Rule 36.1 has expanded the scope of relief to include expired illegal sentences, and the State, as it did in the Court of Criminal Appeals, has conceded that Rule 36.1 expands the scope of relief to include expired illegal sentences. As support for their argument, the State and Mr. Brown point to language in Rule 36.1 permitting either the defendant or the State to file a motion to correct an illegal sentence "at any time." They contend that this language, combined with the absence of any language requiring the filing of a Rule 36.1 motion before expiration of the sentence or while a defendant is restrained of liberty, support interpreting Rule 36.1 as permitting the correction of expired illegal sentences.

However, we are not required to accept the State's concession and decline to do so in this instance. See State v. Hester, 324 S.W.3d 1, 69 (Tenn. 2010); Harris v. State, 301 S.W.3d 141, 145 (Tenn. 2010); Barron v. State, Dep't of Human Servs., 184 S.W.3d 219, 223 (Tenn. 2006). We are also not persuaded by Mr. Brown's and the State's interpretation of Rule 36.1, although we recognize that some panels of the Court of Criminal Appeals have embraced this interpretation of the rule. See, e.g., State v. Dean, No. E2014-02169-CCA-R3-CD, 2015 WL 5031775, at *3 (Tenn. Crim. App. Aug. 6, 2015) (discussing the disagreement among the Court of Criminal Appeals' panels); State v. Jackson, No. W2014-02445-CCA-R3-CD, 2015 WL 4241074, at *6 (Tenn. Crim. App. July 14, 2015) (concluding "the fact that the [d]efendant's sentences . . . may have expired does not preclude him from obtaining Rule 36.1 relief if he proves that his sentences were illegal"); Lee v. State, No. W2014-00994-CCA-R3-CO, 2015 WL 2330063, at *3 (Tenn. Crim. App. May 13, 2015) (concluding that Rule 36.1 permits correction of expired sentences); State v. Thompson, No. E2014-01358-CCA-R3-CD, 2015 WL 1548852, at *4 (Tenn. Crim. App. Apr. 1, 2015) ("The trial court's analysis that Rule 36.1 is not applicable because the sentences have expired is misplaced."); State v. Blake, No. W2014-00856-CCA-R3-CO, 2015 WL 112801, at *2 (Tenn. Crim. App. Jan. 8, 2015) (concluding that a defendant may seek correction of an illegal sentence pursuant to Rule 36.1 after the expiration of a sentence because the plain language of the rule permits correction at any time); State v. Robinson, No. E2014-00393-CCA-R3-CD, 2014 WL 5393240, at *2 (Tenn. Crim. App. Oct. 22, 2014) ("[E]ven though appellant's original sentence had expired, appellant may still seek correction of that sentence if he states a colorable claim." (footnote omitted)).

In our view, the phrase "at any time" has no bearing on whether Rule 36.1 authorizes relief from expired illegal sentences. Rather, this language conveys two other important, but unrelated, principles: (1) an illegal sentence may be corrected "at any time, *even if [the sentence] has become final*," Burkhart, 566 S.W.2d at 873 (emphasis added); and (2) Rule 36.1 motions, like habeas corpus petitions, are not subject to any statute of limitations, Hickman, 153 S.W.3d at 20 ("[T]here is no habeas corpus statute of

limitations[.]").  The phrase "at any time" simply does not answer the question of whether Rule 36.1 permits the correction of expired illegal sentences.  On this question, the text of Rule 36.1 is silent.

Admittedly, one possible interpretation of this silence is that Rule 36.1 authorizes the correction of expired illegal sentences, but this interpretation is not reasonable in light of the expressed purpose of Rule 36.1, its language, and the jurisprudential background from which it developed.  Rule 36.1 was adopted "to provide *a mechanism* for the defendant or the State *to seek* to correct an illegal sentence." Tenn. R. Crim. P. 36.1 advisory comm'n cmt. (emphasis added.)  Neither the comments to Rule 36.1 nor its text suggest that it was intended to expand the *scope of relief* available on such claims by permitting the correction of expired illegal sentences.  Had such an expansion been intended, Rule 36.1 would have almost certainly included language clearly expressing that intent, given its inconsistency with this Court's prior decisions refusing to grant habeas corpus relief for expired illegal sentences.  That Rule 36.1 was not, in fact, intended to expand the scope of relief for illegal sentence claims is evidenced by the portion of Rule 36.1 defining "illegal sentence" exactly as this Court had already defined that term in the habeas corpus context.

Moreover, the interpretation the State and Mr. Brown seek could potentially produce absurd, and even arguably unconstitutional, results.  For example, under this interpretation of Rule 36.1, the State would be entitled to correct an illegally *lenient* sentence, even after the sentence had been fully served.  A defendant faced with the prospect of returning to prison after already serving his sentence would undoubtedly raise many objections to Mr. Brown's and the State's proposed interpretation of Rule 36.1, including constitutional objections. See Commonwealth v. Selavka, 14 N.E.3d 933, 941 (Mass. 2014) ("[W]e conclude that even an illegal sentence will, with the passage of time, acquire a finality that bars further punitive changes detrimental to the defendant.  Accordingly, in the circumstances here, the delayed correction of the defendant's initial sentence, in which he by then had a legitimate expectation of finality, violated double jeopardy and cannot stand.").  As Judge John Everett Williams has observed in dissent in another case involving this same issue, the "outcry" would be unimaginable were "the State [to] start using Rule 36.1 to jail untold numbers of citizens that by all indications have completely served their sentences and are now being told, some [twenty] years later, that a mistake was made." Lee, 2015 WL 2330063, at *5 (Williams, J., dissenting).  Rather than adopt an interpretation of Rule 36.1 that is not supported by the expressed purpose or language of Rule 36.1, that is not consistent with the jurisprudential context from which Rule 36.1 developed, and that has the potential to result in unconstitutional applications of Rule 36.1, we hold that Rule 36.1 does not expand the scope of relief and does not authorize the correction of expired illegal sentences.  Therefore, a Rule 36.1 motion may be summarily dismissed for failure to state a colorable claim if the alleged illegal sentence has expired.

The record on appeal reflects that Mr. Brown's sentences expired ten years ago. Indeed in his brief before the Court of Criminal Appeals, Mr. Brown acknowledged that his sentences "ended" on June 10, 2005, with the dismissal of the probation revocation warrant. Because Rule 36.1 does not authorize relief from expired illegal sentences, we affirm the judgments of the courts below dismissing Mr. Brown's Rule 36.1 motion.[12]

Although our answer to the first question presented in this appeal is dispositive of Mr. Brown's Rule 36.1 motion, we will address two other issues in order to provide guidance to litigants, lawyers, and judges, and to afford Mr. Brown the relief on the law and the facts to which he is entitled. See Tenn. R. App. P. 36(a).

### C. Failure to Award Pretrial Jail Credit

The State has conceded in this Court, as it did in the Court of Criminal Appeals, that Mr. Brown's assertion that the trial court failed to award him pretrial jail credits is sufficient to state a colorable claim for relief under Rule 36.1 because a statute requires trial courts to award such credits[13] and because the Court of Criminal Appeals has held

---

[12] Our interpretation of the scope of relief available under Rule 36.1 obviates the need to address the Court of Criminal Appeals' holding that Mr. Brown's motion is moot. However, we note that, "[a]lthough the issues are often mistakenly blurred, the scope of habeas corpus jurisdiction and the mootness of a particular writ are separate and distinct questions." May, 245 S.W.3d at 356 (Koch, J., dissenting) (citing Malloy v. Purvis, 681 F.2d 736, 738 n.1 (11th Cir. 1982); Harrison v. State, 597 F.2d 115, 117-18 (7th Cir. 1979)). "[A] challenged conviction's collateral consequences may prevent a habeas corpus petition from becoming moot." Id. (citing Carafas v. LaVallee, 391 U.S. 234 (1968); Jones v. Cunningham, 371 U.S. 236 (1963)). However, the existence of a collateral consequence that prevents "a case from becoming moot does not answer the question of whether a petition falls within the scope of habeas corpus jurisdiction." Id. When a sentence has expired and the "restraint on a petitioner's liberty is merely a collateral consequence of the challenged judgment, habeas corpus is not an appropriate avenue for seeking relief." Hickman, 153 S.W.3d at 23. This same limitation applies to the scope of relief available under Rule 36.1. Collateral consequences may prevent a case from becoming moot in the traditional sense of the mootness doctrine, but Rule 36.1 is not an appropriate avenue for seeking relief from collateral consequences.

[13] Tennessee Code Annotated section 40-23-101(c) provides:

> The trial court shall, at the time the sentence is imposed and the defendant is committed to jail, the workhouse or the state penitentiary for imprisonment, render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the city jail or juvenile court detention prior to waiver of juvenile court jurisdiction, or county jail or workhouse, pending arraignment and trial. The defendant shall also receive credit on the sentence for the time served in the jail, workhouse or penitentiary subsequent to any conviction arising out of the original offense for which the defendant was tried.

that a trial court's failure to award pretrial jail credit renders a defendant's sentence illegal. See Tucker v. Morrow, 335 S.W.3d 116, 123 (Tenn. Crim. App. 2009) (citing May, 245 S.W.3d at 344). This Court has not previously held that the trial court's failure to award pretrial jail credits renders the sentence illegal. Moreover, in so holding, the Court of Criminal Appeals relied upon a decision this Court rendered in an appeal as of right, in which the trial court's failure to award pretrial jail credits was raised as an appealable error. See Stubbs v. State, 393 S.W.2d 150, 154 (Tenn. 1965). Additionally, the Court of Criminal Appeals' holding in Tucker that a trial court's failure to award pretrial jail credits renders a defendant's sentence illegal *predated* Davis and Cantrell, which comprehensively defined "illegal sentence," for purposes of both habeas corpus and Rule 36.1. See Wooden, __ S.W.3d at __.

While we certainly agree with the Court of Criminal Appeals that a statute requires trial courts to award pretrial jail credits, we conclude that the intermediate appellate court erred by holding that a trial court's erroneous failure to comply with this statute renders *the sentence* illegal. Although pretrial jail credits allow a defendant to receive credit against his *sentence* for time already served, awarding or not awarding pretrial jail credits does not alter the *sentence* in any way, although it may affect the length of time a defendant is incarcerated. A trial court's failure to award pretrial jail credits may certainly be raised as error on appeal, as the defendant in Stubbs chose to do. But a trial court's failure to award pretrial jail credits does not render the *sentence* illegal and is insufficient, therefore, to establish a colorable claim for relief under Rule 36.1. See Wooden, ___ S.W.3d at ___ (defining colorable claim as "a claim that, if taken as true and viewed in a light most favorable to the moving party, would entitle the moving party to relief under Rule 36.1").

### D. Violation of Tenn. R. Crim. P. 11(c)

The final issue we address is Mr. Brown's argument that the sentences he received on the Class C felony offenses are illegal because the trial court violated Tenn. R. Crim. P. 11(c) by imposing six-year sentences rather than the agreed upon three-year sentences. Where a trial court fails, by reason of clerical mistake, oversight, or omission, to record a defendant's sentence accurately on a judgment, the trial court maintains the power to correct the clerical error under Rule 36. Moore, 814 S.W.2d at 383. To determine whether a clerical error has been made, a court ordinarily must compare the judgment with the transcript of the trial court's oral statements. Id. When there is a conflict between the judgment and the transcript of the trial court's statements, the transcript controls. Id. (citing State v. Zyla, 628 S.W.2d 39, 42 (Tenn. Crim. App. 1981); Farmer v. State, 574 S.W.2d 49, 50 (Tenn. Crim. App. 1978)); see also State v. Rowden, No. M2012-01683-CCA-R3-CD, 2013 WL 4774131, at *12 (Tenn. Crim. App. Sept. 5, 2013).

In this case, the transcript Mr. Brown attached to his Rule 36.1 motion clearly establishes that the trial court accepted the plea agreement, including the recommended three-year concurrent sentences for the Class C felony offenses. The State concedes that the trial court's recording of the sentence length as six years rather than three years on the judgments is a clerical error, which may be corrected pursuant to Rule 36. Accordingly, although the defendant has failed to state a colorable claim for relief under Rule 36.1, Mr. Brown is entitled to have the trial court correct the clerical error in the judgments in the manner prescribed by Rule 36. Permitting correction of the clerical error pursuant to Rule 36 despite the expiration of Mr. Brown's sentence does not contravene our principal holding that Rule 36.1 does not authorize courts to grant *relief* from expired illegal sentences. Correcting clerical errors so that the record accurately reflects the sentence imposed does not amount to granting relief from expired illegal sentences. Accordingly, this matter is remanded to the trial court for correction of the clerical error.

## IV. Conclusion

We conclude that Rule 36.1 does not expand the scope of relief available for illegal sentence claims and therefore does not authorize the correction of expired illegal sentences. We also conclude that a Rule 36.1 motion alleging that a trial court failed to award pretrial jail credits is insufficient to state a colorable claim for relief from an illegal sentence. However, we hold that Mr. Brown has established a clerical error in the judgments on his Class C felony convictions under Rule 36, which should be corrected. Accordingly, we affirm the judgment of the Court of Criminal Appeals upholding the trial court's dismissal of the defendant's Rule 36.1 motion and remand this matter to the trial court for correction of the clerical error in accordance with Rule 36. Costs of this appeal are taxed to the State of Tennessee, for which execution shall, if necessary, issue.

_____
CORNELIA A. CLARK, JUSTICE

- 15 -